**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

**APPEAL NO. 23-1963**

**UNITED STATES OF AMERICA,**
Appellant,

**v.**

**CARLOS VÁZQUEZ-NARVAEZ,**
Defendant-Appellee.

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

---

# BRIEF FOR APPELLANT

---

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

Gregory B. Conner
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

## TABLE OF CONTENTS

Jurisdictional Statement ........................................................................ 1

Statement of the Issue on Appeal ........................................................ 2

Statement of the Case ............................................................................ 3

Summary of the Argument ................................................................... 15

Argument ................................................................................................ 17

The district court's imposition of a 21-day, time-served, sentence for possessing significant quantities of prepubescent child pornography was substantively unreasonable as it was premised on a lacking and implausible rationale ................................ 17

Conclusion ............................................................................................. 32

## TABLE OF AUTHORITIES

**FEDERAL CASES**

Gall v. United States, 552 U.S. 38 (2007) .......... 18

Osborne v. Ohio, 495 U.S. 103 (1990) .......... 26–27

Paroline v. United States, 572 U.S. 434, 458 (2014) .......... 21, 25

United States v. Cates, 897 F.3d 349 (1st Cir. 2018) .......... 22

United States v. Clogston, 662 F.3d 588 (1st Cir. 2011) .......... 31

United States v. Cookson, 922 F.3d 1079 (10th Cir. 2019) .......... 32

United States v. Crespo-Ríos, 787 F.3d 34 (1st Cir. 2015) .......... passim

United States v. Demma, 948 F.3d 722 (6th Cir. 2020) .......... 23

United States v. Goff, 501 F.3d 250 (3d Cir. 2007) .......... 26–27

United States v. Goldberg, 491 F.3d 668 (7th Cir. 2007) .......... 25–28

United States v. Gordon, 291 F.3d 181 (2d Cir. 2002) .......... 31

United States v. Laine, 404 F. App'x 571 (3d Cir. 2010) .......... 29

United States v. Mantha, 944 F.3d 352 (1st Cir. 2019) .......... 31

United States v. Miller, 594 F.3d 172 (3d Cir. 2010) .......... 25, 28

United States v. Milo, 506 F.3d 71 (1st Cir. 2007) .......... 28

United States v. Morace, 594 F.3d 340 (4th Cir. 2010) .......... 23, 24, 32

United States v. Muñoz-Fontánez, 61 F.4th 212 (1st Cir. 2023) .......... 32

United States v. Ramey, 721 F. App'x 135 (3d Cir. 2018) .......... 25

United States v. Reyes-Correa, 81 F.4th 1 (1st Cir. 2023) .......... 31

United States v. Reyes-Torres, 979 F.3d 1 (1st Cir. 2020) .......... 18–19

United States v. Valle-Colón, 21 F.4th 44 (1st Cir. 2021) .................................3

United States v. Velázquez, 777 F.3d 91 (1st Cir. 2015) .................................22

United States v. Viloria-Sepúlveda, 921 F.3d 5 (1st Cir. 2019) .......................17

United States v. Vélez-Soto, 804 F.3d 75 (1st Cir. 2015)..................................18

**FEDERAL STATUES**

18 U.S.C. § 2252(a)(1) ..........................................................................6

18 U.S.C. § 2252A(a)..........................................................................14

18 U.S.C. § 2252A(a)(5)(B) ..........................................................................6

18 U.S.C. § 2252A(b)(1)..........................................................................14

18 U.S.C. § 3553(a)..........................................................................passim

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. The district court sentenced Carlos Vázquez-Narvaez and entered its judgment on October 6, 2023. (DE 34).[1] The United States filed a timely notice of appeal. (DE 44).

---

[1] "DE" refers to docket entries before the district court in District of Puerto Rico criminal case No. 23-cr-115; "AA" is the Appellant's Appendix; "SA" is the Sealed Appendix.

## STATEMENT OF THE ISSUE ON APPEAL

**Whether the district court imposed a substantively unreasonable sentence of time served, 21 days, for possession of prepubescent child pornography when the basis for the non-custodial sentence was either lacking or implausible.**

## STATEMENT OF THE CASE

**Discovered with Child Pornography**[2]

During an investigation of the peer-to-peer file sharing network BitTorrent, FBI agents in the San Juan field office located an account that contained files of child pornography. (SA 32). The FBI identified the internet protocol address for the downloads of the files, which was registered to a Puerto Rican internet provider. (*Id.*). The FBI subpoenaed the internet provider and found that the internet account was registered to the defendant, Carlos Vázquez-Narvaez. (*Id.*).

The FBI executed a search warrant of Vázquez's house in Yauco, Puerto Rico, where it seized devices including a Samsung tablet with child pornography. (SA 32). Vázquez agreed to be interviewed by agents and admitted to using his cell phone and the Samsung tablet to watch child pornography. (*Id.*). He told the agents that he watched child pornography involving minors around the ages of 14 or 15, sometimes as young as 10

[2] Because Vázquez pleaded guilty, the facts in this brief come from the undisputed portions of the presentence report, the change-of-plea colloquy, and the transcript of the sentencing hearing. *United States v. Valle-Colón*, 21 F.4th 44, 46 (1st Cir. 2021).

years old. (SA 32). He viewed child pornography of both males and females, but mostly females. (*Id.*). He watched the material for 30 to 90 minutes at a time. (SA 37).

Vázquez told the agents that he began watching child pornography "by chance" over five years before his arrest, though he claimed not to watch pornography that involved violence against minors. (SA 32). He watched the child pornography regularly, especially after losing his job, eventually watching it on a daily basis. (SA 37, 41). He viewed the material "through torrent, twitter, and telegram." (SA 37). He denied having interacted with minors online or in person. (*Id.*). Although Vázquez "felt guilt" about his behavior and sometimes deleted images "because of what they depicted," (SA 37), he also deleted his search history and continued looking at child pornography. (SA 32, 37).

While Vázquez later admitted to possessing between 300 and 600 images of child pornography, there were over 600 images of child pornography recovered from his devices. (SA 33). A download of 27 files from the Samsung tablet included the following file names:

> (a) 4yo beautiful Indian child pthc pedo new private 2yo 3yo 5yo 6yo 7yo 8yo 9yo.avi

(b)(100) PTHC - Webcam - 2 girls about 12yo - Lesbian action - [*omitted*] 2011 01 27 09 44 34 Am 004427.avi

(c)([*omitted*]) pthc 2015 - 2 little gir1ssuck mans dick so (good) [omg – [*omitted*]].avi

(d)Pthc 2014-Asian - 2 Lesbian Gir1 9yo 10yo.avi

(e) Hidden Cam In Russian Pool Locker Room -14 Year Old Girl An Her Mom In A Pool Changing Room ([*omitted*] fan Pthc Pedo).mpg

(f) 13yo [*omitted*] 15yo [*omitted*] get cum in face (two 13yo little girls cumshot facial pthc pedo jailbait preteen [*omitted*] 12yo 16yo).mpg

(g)(-Pthc Center-)([*omitted*])(2012) 10Yo Firsthair - 10Yo Boy 12Yo Girl Fuck 4m39S.avi

(h)[*name omitted*] 2015 webcam 12yo rus girl suck 6yo bro like crazy EPIC!!.mp4

(i) (Pthc Kidcam [*omitted*]) 11Yo Girl Moaning Having Orgasm Watching Huge Cumshot From Big Old Cock New Very Good.avi

(j) [preteen] 10y & 11y Drunken Girls In Russian Park Molested – [*omitted*] nonude kids 8y 9y 10y kids [*omitted*] 2014 ptsc pthc.avi

(k)8Yo - Beautiful Lil Girl Sucks Man's Big Dick Great & Takes A Great Facial!! - (33) [*omitted*] 2010 Latingirl 1 (Pthc Preteen).avi

(l) [*omitted*] 2015 11yo and uncle best anal fuck creampie ever!!!!!.avi

(SA 30–31).

In one video labeled "tlz 9 yo pthc 2015 girl fuck.avi," a prepubescent female is seen having vaginal intercourse with an unknown male. (SA 31). In another video titled, "[*omitted*] 201511yo and uncle best anal fuck creampie ever!!!!!.avi," a prepubescent female is observed performing fellatio on an unknown male and then engaging in vaginal intercourse for approximately four minutes. (SA 31). In a third video, "8Yo - Beautiful Lil Girl Sucks Man's Big Dick Great & Takes A Great Facial!! - (33) [*omitted*] 2010 Latingirl 1 (Pthc Preteen).avi," an unknown male inserts his penis into the mouth of a prepubescent female and continues to move her head back and forth on his penis for approximately one minute until he ejaculates onto her mouth and chest. (*Id.*).

**District Court Proceedings**

Vázquez was charged in a two-count indictment with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and transportation of child exploitation material in violation of 18 U.S.C. § 2252(a)(1). (AA 10–12).

Vázquez was detained for 5 days between his arrest and his bail hearing. (AA 5). The district court released Vázquez, over the government's objection, on conditions that included a $10,000 unsecured bond, home detention, and location monitoring. (AA 13–16). He remained in detention for an additional 16 days until he posted the bond, for a total period of 21 days. (AA 5–6, 77).

The parties entered into a plea agreement in which Vázquez pleaded guilty to the first count, for possession of child pornography. (AA 17–30). The government agreed to dismiss count two, which carried a five-year mandatory minimum sentence. (AA 23). The plea agreement included a base offense level of 18, a 2-level enhancement for a prepubescent victim or victim under 12 years old, a 2-level enhancement for use of a computer or interactive device, a 4-level enhancement because the offense involved 300 to 600 images, and a 3-level reduction for acceptance of responsibility. (AA 19). Under the terms of the agreement, the parties agreed to jointly recommend a term of imprisonment of 48 months. (AA 20). The parties further agreed that if the district court imposed a sentence of 57 months or less, Vázquez waived his right to appeal "any aspect of this case's judgment

and sentence." (*Id.*). The district court accepted Vázquez's guilty plea at the change-of-plea hearing. (AA 51–52).[3]

The probation officer then submitted its presentence report to the district court. (SA 26–52). The presentence report made the same Guidelines calculation, except that it included a 5-level enhancement for the offense involving more than 600 images (as opposed to the plea agreement's 4-level enhancement). (SA 38). So the presentence report's total offense level was calculated to be 24 while the plea agreement's was 23. (SA 38; AA 19). Vázquez had no prior convictions and fell into criminal history category I. (SA 38). The presentence report thus calculated the Guidelines sentencing range to be 51 to 63 months. (SA 44). The report also included statistics from the Sentencing Commission showing that 95% of criminal history category I defendants subject to USSG § 2G2.2 and a final offense level of 24 received a sentence of imprisonment. (SA 50).

---

[3] Shortly after the change-of-plea hearing, Vázquez moved the court to modify his conditions of release. (AA 54–56). The government opposed, explaining that Vázquez could already participate in certain activities upon approval by his supervising officer and further modification was inappropriate in light of the charges. (AA 57–58). The magistrate judge denied Vázquez's request. (AA 7).

The presentence report also included victim impact statements of two of the victims depicted in the child pornography that Vázquez downloaded. (SA 34–36). In the first, a victim referred to as "Tara" explained that even though the original perpetrator of the crime had been convicted, she continued to suffer from harassment and trauma because he had shared the content. (AA 34). She suffered from stalkers, individuals who sent her sexually explicit material, and others who broke the windows in her house and left nails in her yard. (*Id.*). She was threatened and her mother was required to escort her everywhere she went. (*Id.*). Tara received constant threats and was forced to move for concerns for her safety. (*Id.*). She experienced constant stress and anxiety, night terrors, panic attacks, and needed years of counseling. (AA 34–35). Tara was never able to heal from the experience or feel a sense of security because her abuser shared the content she was in and it continues to be passed to others who seek it. (*Id.*). She was under 12 years old at the time of the abuse. (AA 34).

The second victim who submitted a statement, referred to as "Lily," described that when she was 15 years old, someone from the United Kingdom manipulated her into providing sexually explicit material. (SA 35).

Attempting to escape the abuser's control, Lily ceased all communication with him, which caused him to disseminate the content with her all over the internet. (*Id.*). She was forced to leave her high school and complete her degree with an online schooling platform. (*Id.*). She received messages from strangers saying that she was "disgusting," a "whore," that she should be "ashamed of [her]self," and that she "should kill [her]self." (SA 35). Years after her abuse, a man contacted her work to ask if she was employed there. (SA 36). This individual then emailed her, writing: "I have seen stuff circulating of you and would like to see if there's an opportunity"; "I've got some vids of you doing some strange stuff, wanna talk about it?"; "Imagine if these vids got into the wrong hands, would ruin a career and have prison time." (*Id.*). She was unable to return to a normal life and was unsure if she could turn a corner from the crimes committed against her. (*Id.*).

Vázquez began receiving sex offender treatment prior to sentencing. (SA 41). He told the probation officer that he was "unable to go into further detail . . . of his current treatment given that he ha[d] not been sentenced yet." (SA 42, 48).

At sentencing, both parties "request[ed] that the Court consider the plea agreement entered upon by the parties in this case was to a base offense level of 23, of 48 months." (AA 63, 64-65). In his allocution, Vázquez stated that he was ashamed of what he had done and ashamed to be there in front of his friends and family. (AA 63). He apologized to anyone he hurt directly, including his family, and to the victims of the materials he "looked at." (AA 64). He hoped "that this event doesn't define the rest of [his] life," and that he would receive a sentence that would allow him to return to his family and friends. (*Id.*). He mentioned that he had started receiving help and would continue receiving it during his sentence. (*Id.*).

The district court agreed with the presentence report's calculation of the Guidelines range of 51 to 63 months. (AA 66). The court further indicated that it had considered Vázquez's offense and the plea agreement and sentencing range. (AA 67). But it found the proposed 48-month sentence greater than necessary to fulfill the purposes of 18 U.S.C. § 3553(a). (AA 67). Instead, the court found that a downward variance to a time-served sentence (21 days) and seven years' supervised release was appropriate. (*Id.*).

The district court began its explanation by noting Vázquez's guilty plea to possessing child exploitation material. (AA 66). It then turned to Vázquez's personal characteristics and history, mulling his age, lack of dependents, education, current unemployment, and health. (*Id.*). The court remarked that he had cooperated with the government, was undergoing specialized treatment for sex offenders, and that had no history of substance abuse. (AA 66–67). It "under[stood] that" his sex-offender treatment "progress may be tarnished with an interruption in treatment to serve an imprisonment term." (AA 68). The court further noted that Vázquez had the support of his wife, family, and friends, and had "complied with the most restrictive bail conditions." (*Id.*). And it added that a noncustodial sentence imposed would allow Vázquez to begin paying restitution upon gaining employment. (*Id.*).

The district court went on to explain that it did not want to undermine the seriousness of the offense, but it credited that Vázquez had "done everything right" after being caught. (AA 68–69). It repeated that Vázquez had support from his family who were in attendance. (AA 69). And it expressed the belief that "a term of imprisonment would not benefit

[Vázquez] nor the society." (*Id.*). The court later added that it was "giving credit to the fact that pursuant to the charges, [Vázquez] had no direct contact with the victims, and we are not talking about production of child pornography, nor enticement . . . ." (AA 76).

Consistent with its plea agreement, the government dismissed count two, which had carried a five-year mandatory minimum sentence. (AA 76–77). But the government objected to the non-custodial sentence imposed. (AA 77). It argued that the other types of offenses to which the court compared Vázquez's case carry ten and fifteen-year mandatory minimum sentences. (*Id.*). And because Vázquez had been granted bail, the type of detention was "basically five days." (*Id.*). The district court and the defense counsel responded that because it took Vázquez a while "to gather the paperwork for posting the bail," he served 21 days of detention. (*Id.*).

The government continued by arguing that the Guidelines range and recommendation from the plea agreement was already lower than the range reflected in the presentence report. (*Id.*). And the charge that the government had agreed to dismiss carried a mandatory minimum sentence of five years

and a maximum of twenty. (AA 77–78).[4] So the government objected that the sentence was "lower than should be encompassed for these type of cases that involve the possession of child exploitation material." (AA 78). The court noted the objection. (*Id.*).

This appeal followed.

---

[4] Referring to 18 U.S.C. § 2252A(a), subsection (b)(1) sets the penalty for those offenses: "Whoever violates, or attempts or conspires to violate, paragraph (1), (2), (3), (4), or (6) of subsection (a) shall be fined under this title and imprisoned not less than 5 years and not more than 20 years . . ." 18 U.S.C. § 2252A(b)(1).

## SUMMARY OF THE ARGUMENT

Vázquez possessed child pornography involving pre-pubescent victims. His undisputed Guidelines range was 51–63 months' imprisonment, and both parties recommended a sentence of 48 months' imprisonment. Yet with a scant and implausible explanation, the district court varied down to a time-served sentence of 21 days' imprisonment. The court failed to justify that extreme downward variance for such a serious offense, and therefore the sentence was substantively unreasonable.

Several flaws infect the district court's explanation. It never explained how Vázquez's time-served sentence reflected the seriousness of his crimes or would deter him and others from violating the child-pornography laws. *See United States v. Crespo-Ríos*, 787 F.3d 34, 38 (1st Cir. 2015) (vacating a noncustodial sentence in a child pornography case for failure to explain a downward variance). Instead, it focused on his rehabilitative potential and perceived low risk of recidivism and missed the broader picture of Vazquez's crime and the real harms that it caused to its minor victims. *See id.* And even as it did so, it placed too great a weight on run-of-the-mill facts—nothing so exceptional as to warrant a noncustodial sentence—and

failed to appreciate the treatment options that Vázquez would have access to in prison.

In the end, this case echoes *Crespo-Ríos*, as well as persuasive authority from other circuits consistent with that case, which all show that at least a greater explanation was necessary to justify the extreme variance in this case. Neither the relevant precedent nor this record provides the basis for this Court to read those reasons into the record when neither party filed sentencing memoranda and both expected terms of imprisonment, and thus made limited argumentation. This Court should therefore vacate the non-incarcerative sentence and remand for resentencing.

# Argument

**The district court's imposition of a 21-day, time-served, sentence for possessing significant quantities of prepubescent child pornography was substantively unreasonable as it was premised on a lacking and implausible rationale**

**Issue**

The district court imposed a non-incarcerative sentence of time served, or 21 days of pretrial detention, for defendant Vázquez after he pleaded guilty to possession of prepubescent child pornography. The court offered little justification for the variance, pointing to Vázquez's compliance with bail conditions, the absence of other crimes (like production or enticement), Vázquez's family support, his ability to work and pay restitution, and the continuation of his sex-offender treatment. The court grounded its reasoning on false or mistaken premises, and failed to address most of the § 3553(a) factors. The question is whether this was an abuse of discretion.

**Standard of Review**

This Court reviews preserved sentencing challenges, procedural and substantive, for abuse of discretion. *United States v. Viloria-Sepúlveda*, 921 F.3d 5, 8 (1st Cir. 2019). Within that framework, this Court reviews "a district court's factual findings for clear error, and its interpretation and application

of the Guidelines de novo." *United States v. Vélez-Soto*, 804 F.3d 75, 77 (1st Cir. 2015). The government objected to the district court's justification for the variance (AA 77–78), preserving the objection.

**Discussion**

The "starting point" for a district court imposing a criminal sentence is to determine the advisory Guidelines range. *Gall v. United States*, 552 U.S. 38, 49 (2007). From there, the district court considers the parties' arguments and the sentencing factors in 18 U.S.C. § 3553(a) to choose a sentence that is sufficient but not greater than necessary. *Id.* at 49–50. The court must explain its sentence to allow for appellate review and promote the perception of fair sentencing. *Id.* at 50. While even a "dramatic[]" variance from the Guidelines does not, in and of itself, render a sentence substantively unreasonable, *Crespo-Ríos*, 787 F.3d at 38, "a major [variance] should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50. "The lack of an adequate explanation can be characterized as either a procedural error or a challenge to the substantive reasonableness of the sentence." *Crespo-Ríos*, 787 F.3d at 37 n.3. For a sentence to be substantively reasonable, the district court must provide a "plausible sentencing rationale" and reach

a "defensible result." *United States v. Reyes-Torres*, 979 F.3d 1, 9 (1st Cir. 2020). Here, the rationale was lacking and implausible.

This Court's decision in *Crespo-Ríos* reflects a largely analogous case. There, the defendant pleaded guilty to possession of child pornography and transferring obscene material to a minor. 787 F.3d at 35. The defendant had communicated with an FBI agent thinking it was a 12-year-old girl and both showed his genital area in the communication and asked who he though was a young girl to engage in sexual activities. *Id.* When the FBI searched his home and computer, they found hundreds of images and a video of child pornography. *Id.* The defendant in *Crespo-Ríos* was arrested and remained in jail for 13 days until he was released to home incarceration on conditions of release. *Id.* at 36.

The district court rescheduled the sentencing hearing and ordered an updated psychosexual report. *Crespo-Ríos*, 787 F.3d at 35. At the second sentencing hearing, the psychosexual expert who authored the report testified that the defendant posed a low risk of recidivism if he went to treatment and controlled his substance abuse. *Id.* at 36. The district court granted the defense's request for a time served sentence, varying down from

the 70-to-87-month Guidelines range. *Id.* The district court pointed to the psychosexual report and the defendant's potential for rehabilitation. *Id.* at 37. Though it remarked that the offense was "very serious," it did not explain how it factored the seriousness of the offense into its analysis. *Id.* The government had referenced incarcerative sentences for like offenses, but the district court responded that disparities were less of an issue for cases with plea agreements. *Id.* at 40.

This Court vacated the sentence on appeal because there was "an inadequate justification for the extreme variance imposed since the district court did not explain its consideration, if any, of several critical sentencing factors." *Id.* at 40. This Court faulted the district court for "focus[ing] exclusively on the defendant's potential for rehabilitation and low risk of recidivism" and failing to "explain how it had weighed the other factors laid out in § 3553(a), or why this particular sentence was appropriate in light of these factors." *Id.* at 38. "Critically, there [was] no explanation of how this sentence reflects the seriousness of the crimes committed, avoids sentencing disparities, promotes general deterrence, or promotes respect for the law." *Id.* The district court in *Crespo-Ríos* also failed to address the government's

argument regarding like child pornography possessors. *Id.* at 40. And while the district court had mentioned "the offense," it failed to explain how its chosen sentence addressed the two serious offenses that had occurred. *Id.* "The possession of child pornography," this Court wrote, "is far from a 'victimless crime.'" *Id.* (quoting *Paroline v. United States*, 572 U.S. 434, 458 (2014)). "Children are subjected to abuse, degradation, and rape for the prurient perusal of those who keep purveyors of these images in business." 787 F.3d at 40. Without more, the court's explanation was "incomplete, and hence inadequate, to justify the extent of the variance imposed." *Id.* at 38–39.

As in *Crespo-Ríos*, a greater variance requires greater explanation, 787 F.3d at 39, and here the district court's explanation for its significant and noncustodial variance was insufficient. The district court critically did not explain how Vázquez's time-served sentence "reflect[ed] the seriousness of the crimes committed, . . . promote[d] general deterrence, or promote[d] respect for the law." *Id.* at 38. The court did not address "the serious harm inherent in the possession of child pornography" by encouraging indirectly the "abuse, degradation, and rape" of children. *Id.* at 40. Nor did it account

for the fact that Vázquez watched this material for over five years. (*See* SA 32).

The unobjected-to descriptions of the pornography in this case involved raping children who had not reached puberty. Raping a prepubescent child is violent. *United States v. Velázquez*, 777 F.3d 91, 95 (1st Cir. 2015) ("[T]his court has not wavered in holding that [even] strict liability sex crimes against minors, such as statutory rape, are crimes of violence"). But it was not a single episode of glimpsing at the pornography, having stumbled upon it "by chance." (SA 32). Viewing child rape and molestation became an obsession—starting five years before his arrest, Vázquez sought out child pornography regularly, eventually finding and consuming it for 30 to 90 minutes every day. (SA 32, 37).

Nor was it just consumption of the child pornography. By using the peer-to-peer network BitTorrent, Vázquez also shared the child pornography with others. *United States v. Cates*, 897 F.3d 349, 359 (1st Cir. 2018) ("To become a member of the BitTorrent network, the defendant installed a computer program and created a 'sharing folder,' where files downloaded from the network were stored. By default, files stored in this

folder were available for download by other BitTorrent users."); (SA 30 (describing that during the investigation, the FBI downloaded "27 files that [Vázquez's] device was making available" to others)). So Vázquez was inaccurate to say he had not shared the material (SA 32), as that was how the FBI found him.

The district court pointed to nothing that meaningfully differentiates Vázquez from other first-time child-pornography offenders. Instead, the court emphasized that remaining out of prison would allow Vázquez to continue his treatment and start making restitution (once he finds employment). But the latter is always true, and as to the former, the court seemed to overstate the disruption to his treatment that would occur with imprisonment. After all, "the prison system itself provides sex-offender treatment," *United States v. Demma*, 948 F.3d 722, 730 (6th Cir. 2020), so Vázquez would at most need to change treatment providers. *Cf. United States v. Morace*, 594 F.3d 340, 350 (4th Cir. 2010) (noting that defendants like Vázquez sit "within the 'heartland' of persons convicted for possessing child pornography" and that pre-sentencing rehabilitative efforts are not "unusual" for such defendants). Indeed, even Vázquez seemed to accept that

he would continue to receive treatment in prison. (AA 64 ("I hope to be able to receive treatment that would allow me to return to my family and friends and to rebuild my life with the appropriate help, which I've already started receiving, . . . and that I will continue receiving during my sentence.")). And as to employment, while one of the conditions of Vázquez release was to "actively seek employment" (AA 14), he presented no evidence at sentencing that he either obtained employment or even tried to obtain employment.[5]

The district court particularly failed to address the seriousness of Vázquez's offense. Although the court stated that Vázquez's conduct was "very serious," (AA 68), that boilerplate statement is inadequate, *Crespo-Ríos*, 787 F.3d at 38, 40. The district court in Vázquez's case also noted post-sentencing that he had not committed even graver crimes, but that logic does hold when considered fully. Bank robberies could result in murder, but the absence of a murder in a bank robbery case would not render it outside the mine-run of bank robberies. The absence of different crimes did not render

[5] Vázquez holds a bachelor's degree in biology, took courses on opening a business as well as basic computer courses, and has a history of prior employment. (SA 42–43).

Vázquez's conduct outside the mine-run. Further, the district court cited the absence of other offenses that have statutory minimum sentences of 10 years and 15 years, but Vázquez's did commit another offense—which the government agreed to dismiss—that has a mandatory minimum of five years. (*See* AA 76–78). The district court chose inapt comparators to say that Vázquez's case was less severe.

*Crespo-Ríos* is buttressed by decisions from other circuits that air similar concerns. Like the Supreme Court's rejection of child pornography as a "victimless crime," *Paroline*, 572 U.S. at 458, the Third Circuit made plain that "there is no 'mere' or 'passive' act of possessing child pornography. To possess such material is to victimize children in a significant and active manner." *United States v. Ramey*, 721 F. App'x 135, 138 (3d Cir. 2018). Possession of child pornography "creates a market for child abuse," *United States v. Miller*, 594 F.3d 172, 189 (3d Cir. 2010) (quotation omitted), and the "greater the customer demand for [it], the more that will be produced." *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007). "Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded." *Id.*; *Crespo-Ríos*, 787 F.3d at 40

("Children are subjected to abuse, degradation, and rape for the prurient perusal of those who keep purveyors of these images in business."). So it was "Congress's intent that offenses involving child pornography be treated severely." *United States v. Goff*, 501 F.3d 250, 258 n.13 (3d Cir. 2007). These decisions suggest that non-incarcerative sentences are rarely, if ever, appropriate and require more explanation as a result.[6]

Here, the district court's reasoning that a variance was justified at least in part because Vázquez did not commit other crimes such as production (AA 76) is at odds with how other courts have viewed consumption of child pornography. The Supreme Court has described, for example, that "[t]he pornography's continued existence causes the child victims continuing harm by haunting the children for years to come." *Osborne v. Ohio*, 495 U.S. 103, 111 (1990). So "[c]onsumers such as [Vázquez] who 'merely' or 'passively' receive or possess child pornography directly contribute to this continuing victimization." *Goff*, 501 F.3d at 259. It was error for the district court to treat

---

[6] Attached to the presentence report was statistical information from the Sentencing Commission. (SA 50–52). Ninety-five percent of criminal history category I child pornography possessors received a term of imprisonment. (*Id.*).

Vázquez as outside the run-of-the-mill possessor because he consumed but did not produce the pornography or "actually molest children." *See Goldberg*, 491 F.3d at 673 (criticizing suggestion that only those "who actually molest children . . . have 'a real problem'" as inconsistent with "Congress's decision to criminalize the consumption and distribution of child pornography").

Two victims in this case provided detailed victim impact statements describing the revictimization that they endured for years following their sexual abuse. (SA 34–36). One stated: "Every time someone views this trash, he is once again making me re-live the most horrific part of my childhood. I can never truly heal because the perpetrators and stalkers never allow me to do so." (SA 35). The district court's only acknowledgment of the victims seems to be the prohibition of contact and the monetary orders. (*See* AA 70, 72, 75). But there was no assessment of the harm to the victims through the lens of the § 3553(a) factors. It trivialized the substantial harm to these victims to impose a non-custodial sentence and suggest Vázquez's crime was not serious because it was not as direct as production or enticement. That reasoning was inconsistent with Congress's decision to penalize consumption of child pornography because of the harm it creates by

increasing the demand for such material. *Miller*, 594 F.3d at 189; *Goldberg*, 491 F.3d at 672–73.

The district court also erred to remark that imprisonment would "not benefit [Vázquez] nor the society." (AA 69). This Court explained that even if a defendant demonstrates zero risk of re-offense and full contrition, "'punishment is also meant to deter others, affirming the seriousness of the crime and the penalties that others will likely face and the difficulty of avoiding punishment.'" *Crespo-Ríos*, 787 F.3d at 38 (quoting *United States v. Milo*, 506 F.3d 71, 76 (1st Cir. 2007)). Not only did Vázquez fail to make any showing that he presented zero risk of re-offense, his sentence fails to demonstrate the seriousness of child pornography offenses or the penalties and the difficulty of avoiding punishment that like offenders would face. *Crespo-Ríos*, 787 F.3d at 38. If anything, without much explanation at all, the sentence imposed suggests to like offenders that such behavior carries no repercussions. In doing so, the district court failed to explain how its chosen sentence reflected the need for general deterrence, which could undermine "public confidence in the enforcement of the law." *Crespo-Ríos*, 787 F.3d at

40 (quotation omitted). The district court was wrong to indicate that imprisonment for Vázquez would serve no purpose.

This Court's reasoning from *Crespo-Ríos* and *Milo*—discouraging sole reliance on contrition—applies to the district court's apparent consideration of Vázquez's contrition and compliance with conditions of release. (AA 68 (noting Vázquez "complied with the most restrictive bail conditions"); AA 68–69 ("I think you have done everything right [from when] the investigation started until today to warrant the sentence I just imposed.")). Expressed contrition could not be the exclusive reason for such a significant variance. *Crespo-Ríos*, 787 F.3d at 38. Vázquez, moreover, minimized the extent of his conduct. (SA 32 (claiming he never shared material with others or watched anything "that involves violence"); AA 64 (claiming he only "looked at" the child pornography and only "directly" harmed his family and friends)). And while compliance with release conditions is laudable, it is also expected and should not warrant such a drastic variance. *E.g.*, *United States v. Laine*, 404 F. App'x 571, 574 (3d Cir. 2010) (explaining, in rejecting an early termination of supervised release request, that "[c]ompliance with the conditions of supervised release [is] expected and not exceptional"). This

Court's precedents require the district court to explain its reasoning in light of the § 3553(a) factors beyond rehabilitation or contrition.[7] Those considerations should not be a sole basis for a maximum downward variance, and that is particularly true here given that Vázquez downplayed his culpability.

Given how much the district court varied and this record, this Court cannot "fill[] in the gaps" of this "incomplete, and hence inadequate," explanation. *Crespo-Ríos*, 787 F.3d at 39. The district court needed to give "a more thorough explanation" because it "varied so dramatically to a non-incarcerative sentence without explicitly articulating its evaluation of factors other than rehabilitation." *Id.* The record, meanwhile, does not render it "self-evident" that the court implicitly considered these § 3553 factors. *Id.*

---

[7] The government acknowledges that the support of family and friends can facilitate rehabilitation or reintegration after a term of imprisonment. But here, the district court did not connect such support to rehabilitative efforts. (*See* AA 68). And as outlined above, under *Crespo-Ríos*, pointing to rehabilitation alone does not suffice for purposes of providing an adequate explanation. 787 F.3d at 38. In any event, beyond their presence at the sentencing hearing, the extent of the family and friends' support of Vázquez is unclear. After all, he shared with the probation officer that he did not tell some members of his family about being charged, and others he neglected to tell that the nature of the charges was child pornography. (SA 40).

The court's colloquy is silent on key factors, and the parties submitted no sentencing memoranda or arguments about these factors (given their joint endorsement of a 48-month prison sentence). Nor did the court even affirm on the record that it had considered all the § 3553 factors. *Cf. United States v. Clogston*, 662 F.3d 588, 592 (1st Cir. 2011) (such statements carry some weight). *Crespo-Ríos* required more for such a significant variance.

If this Court views the government's objection as having insufficiently preserved its challenge to Vázquez's sentence, despite holding similar objections sufficient, *United States v. Reyes-Correa*, 81 F.4th 1, 10 (1st Cir. 2023), the district court also plainly erred. The absence of a plausible sentencing rationale is a clear and obvious error, *United States v. Mantha*, 944 F.3d 352, 357 (1st Cir. 2019), and the particular failure to address the § 3553(a) factors in a child pornography case is clear and obvious error following *Crespo-Ríos*. *See* 787 F.3d at 39–40. The error was prejudicial in that affected the outcome of the judicial proceedings—had the court considered and explained the remaining sentencing factors, it may have led to a less extreme sentence. *See United States v. Gordon*, 291 F.3d 181, 193 (2d Cir. 2002) ("The ability to claim such a violation of rights is not limited to defendants."). And

as this Court has explained, the failure to sufficiently explain a sentence contravenes Congress's requirement that sentencing courts explain themselves, thereby casting a shadow over the fairness of the judiciary. *United States v. Muñoz-Fontánez*, 61 F.4th 212, 215 (1st Cir. 2023). So while the government views this appeal as subject to abuse of discretion review, the case also meets plain error.

## CONCLUSION

In the end, "the district court was presented with what appears to be a fairly common child pornography possession defendant," both parties recommended a "[48]-month sentence," *Morace*, 594 F.3d at 351, and the government took a five-year mandatory-minimum off the table. Then, "without any request for, or prior on-the-record discussion of, a variance of any kind, the court imposed the most extreme downward variance possible." *Id.* It decided that Vázquez belonged in the five percent of child-pornography-possession offenders who merit a noncustodial sentence without a "specific explanation as to how this sentence comports with [the Section 3553] factors." *Id.* In doing so, the court erred. *See Crespo-Ríos*, 787 F.3d at 38–40; *Morace*, 594 F.3d at 351; *see also United States v. Cookson*, 922

F.3d 1079, 1085–86, 1095 (10th Cir. 2019) (similar error for a defendant with a greater criminal history). As in *Crespo-Ríos*, this Court should vacate Vazquez's sentence and remand "with instructions for the district court to consider, and explain, all relevant sentencing factors for any sentence it imposes." 787 F.3d at 40–41.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this Monday, May 20, 2024.

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

/s/ Gregory B. Conner
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

**Certificate of Compliance with Rule 32(a)**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B) because:

   ☑ the brief contains 6,398 words, excluding the parts of the brief exempted under Fed. R. App. P. 32(f), *or*

   ☐ the brief uses a monospaced typeface and contains ___________ lines of text, excluding the parts of the brief exempted under Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements in Fed. R. App. P. 32(a)(5) and the type-style requirements in Fed. R. App. P. 32(a)(6) because:

   ☑ the brief has been prepared in a proportionally spaced typeface and, except for emphases, in a plain, roman style using Book Antiqua in 14 point, *or*

   ☐ the brief has been prepared in a monospaced typeface using _____________ with ___________________.

Dated: May 20, 2024

/s/ Gregory B. Conner
Assistant United States Attorney

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 20, 2024, I filed the above brief with the Clerk of Court using the Court's electronic-filing system, which sent a notification of the filing to all counsel who have entered an appearance in the appeal.

/s/ Gregory B. Conner
Assistant United States Attorney

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

**APPEAL NO. 23-1963**

**UNITED STATES OF AMERICA,**
Appellant,

**v.**

**CARLOS VÁZQUEZ-NARVAEZ**
Defendant-Appellee.

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

---

# ADDENDUM TO APPELLANT'S BRIEF

---

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

Gregory B. Conner
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Room 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

# INDEX

Docket Entry 34 Judgement........................................................................1

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

District of Puerto Rico

UNITED STATES OF AMERICA
v.
Carlos VAZQUEZ-NARVAEZ

## JUDGMENT IN A CRIMINAL CASE

Case Number: 3:23-cr-00115-CVR-1

USM Number: 51575-510

Peter John Porrata, Esq.
Defendant's Attorney

## THE DEFENDANT:

☑ pleaded guilty to count(s) One (1) of the Indictment on 7/7/2023.

☐ pleaded nolo contendere to count(s) ______ which was accepted by the court.

☐ was found guilty on count(s) ______ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §2252A(a)(5)(B) | Possession of Child Exploitation Material | 1/30/2023 | One (1) |

The defendant is sentenced as provided in pages 2 through 7 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) ______

☑ Count(s) 2 ☑ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

10/6/2023
Date of Imposition of Judgment

s/ Camille L. Vélez-Rivé
Signature of Judge

Camille L. Vélez-Rivé, U.S. District Judge
Name and Title of Judge

10/6/2023
Date

**Addendum 1**

DEFENDANT: Carlos VAZQUEZ-NARVAEZ
CASE NUMBER: 3:23-cr-00115-CVR-1

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Time served.

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at ______________ ☐ a.m. ☐ p.m. on ______________ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on ______________ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on ______________ to ______________

at ______________ , with a certified copy of this judgment.

______________
UNITED STATES MARSHAL

By ______________
DEPUTY UNITED STATES MARSHAL

DEFENDANT: Carlos VAZQUEZ-NARVAEZ
CASE NUMBER: 3:23-cr-00115-CVR-1

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

Seven (7) years.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☑ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☑ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☑ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

DEFENDANT: Carlos VAZQUEZ-NARVAEZ
CASE NUMBER: 3:23-cr-00115-CVR-1

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature ____________________ Date __________

DEFENDANT: Carlos VAZQUEZ-NARVAEZ
CASE NUMBER: 3:23-cr-00115-CVR-1

# SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall not commit another Federal, state, or local crime, and shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court. 2. The defendant shall not unlawfully possess controlled substances.
3. The defendant shall refrain from possessing firearms, destructive devices, and other dangerous weapons.
4. The defendant will not have unsupervised contact (through personal, mail, telephone, computer, electronic device or third parties) with the victim(s) and/or any other related or non-related person below the age of 18 unless determined to be appropriate by the treatment provider and the Probation Officer. The only exception relies in the incidental contact in normal commercial life.
5. The defendant shall consent to the installation of computer monitoring software and/or systems that will enable the Probation Office, or its designee, to monitor and filter any Internet accessing and data storage devices, owned and/or controlled by the defendant. Accordingly, to ensure compliance with the computer monitoring condition, the defendant must allow the probation officer to conduct initial and periodic unannounced searches/examinations on any computers (as defined in 18 U.S.C. § 1030(e)(1)) and/or electronic devices, owned or controlled by the defendant, and subject to computer monitoring, prior to and/or after the installation of the monitoring software. These searches shall be conducted to determine whether the computer or device contains any prohibited data prior to installation of the monitoring software, whether the monitoring software is functioning effectively after its installation, and whether there have been attempts to circumvent the monitoring software after its installation. Such examinations may result in retrieval and copying of all data from the device and any internal or external peripherals and may involve removal of such equipment for the purpose of conducting a more thorough inspection. Additionally, the defendant shall immediately notify the Probation Office upon registration for access to any website or Internet service that allows for: communication with other users, uploading/downloading of files, posting of any material, etc. Notification shall include the site address, username, passwords, pseudonyms and logons. This includes, but is not limited to, social networks, cloud storage services, message boards, etc. The defendant must warn any other people who use these computers or electronic devices that they may be subject to searches pursuant to this condition. Failure to consent may be grounds for revocation. The defendant shall pay for the cost of the monitoring service at the prevailing rate. 6. The defendant shall not engage in a specified occupation, business, or profession bearing a reasonable direct relationship to the conduct constituting the offense. Specifically, the defendant shall not work with persons under the age of 18, or hold a job that gives him authority over and/or access to potential victims. The only exception relies in the incidental contact in normal commercial life. Any employment must be notified in advance; the Probation Officer will make an assessment of the job placement and set employment restrictions based on the Sex Offender Management Procedures Manual. The defendant shall consent to third party disclosure to any employer or potential employer.
7. The defendant shall not participate in any volunteer activity or be involved in any children's or youth organization or any group that would bring him into close contact with a person or persons under the age of 18, unless prior approval of the U.S. Probation Officer.
8. The defendant shall provide the U.S. Probation Officer access to any financial information upon request.
9. The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. Sec. 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state, U.S. Territory or Indian Tribe, sex offender registration agency in which he or she resides, works, is a student, carry on a vacation, or was convicted of a qualifying offense. 10. The defendant shall be required to submit to an initial polygraph examination and subsequent maintenance testing intervals to be determined by the probation office to assist in treatment planning, case monitoring and with the requirements of his supervision or treatment program. Polygraphs will be conducted at least once annually; however, may be conducted on a continuous basis commensurate with risk as determined by the U.S. Probation Office.
11. The defendant shall undergo a sex-offense-specific evaluation and/or participate in a sex offender treatment/and or mental health treatment program arranged by the United States Probation Officer. The defendant shall abide by all rules, requirements, and conditions of the sex offender treatment program(s) and any testing available as approved by the Court. The defendant shall waive his right of confidentiality in any records for mental health assessment and treatment and sign any necessary release form required to obtain such records to allow the U.S. Probation Officer to review and adjust defendant's course of treatment and progress with the treatment provider. The defendant will be required to contribute to the costs of services rendered, by means of co-payment, based on his ability to pay or availability of third-party payment.

DEFENDANT: Carlos VAZQUEZ-NARVAEZ
CASE NUMBER: 3:23-cr-00115-CVR-1

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 3,000.00 | $ 0.00 | $ 500.00 | $ 5,000.00 |

☑ The determination of restitution is deferred until gainfully employed. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| HG1 | | $3,000.00 | |
| **TOTALS** | $ 0.00 | $ 3,000.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ ____________

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☐ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: Carlos VAZQUEZ-NARVAEZ
CASE NUMBER: 3:23-cr-00115-CVR-1

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ 8,600.00 due immediately, balance due

☐ not later than __________, or
☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal ______ *(e.g., weekly, monthly, quarterly)* installments of $ ______ over a period of ______ *(e.g., months or years)*, to commence ______ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal ______ *(e.g., weekly, monthly, quarterly)* installments of $ ______ over a period of ______ *(e.g., months or years)*, to commence ______ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within ______ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☑ Special instructions regarding the payment of criminal monetary penalties:
The defendant will begin making restitution payments when he is gainfully employed, as ordered by the Court.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:
Forfeiture as outlined in the Plea Agreement pursuant to 18 U.S.C. §2253 is ordered.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.